This suit was filed by plaintiff against three defendants as joint tort-feasors; viz., Luke Boudreaux, Edith St. Germain and Elise St. Germain, asking for damages in the sum of $10,000 for physical and mental pain and suffering on account of an injury received by him on February 15, 1940, when he was struck by an automobile driven by Boudreaux, after the Boudreaux car had collided with an automobile driven by Miss Edith St. Germain in the intersection of St. Antoine and Simcoe Streets in the City of Lafayette. He also sues for loss of wages on account of said injuries in the sum of $9.50 per week from the date of the accident. Miss Elise St. Germain was made a party defendant under an allegation of the petition that the car being driven by Miss Edith St. Germain belonged to the former and was being driven at the time by Miss Edith St. Germain on a mission for the owner. Miss Elise St. Germain filed an exception of no right of action against her for the reason that Miss Edith St. Germain was not driving the car as her agent at the time of the accident. This exception was sustained by the court, and Miss Elise St. Germain is no longer a party to this litigation.
After trial of the case, the court rendered a judgment in favor of the plaintiff and against Boudreaux in the sum of $1,265 and dismissed the suit as to Miss Edith St. Germain. The plaintiff has appealed from this judgment and is asking for its reversal in so far as his suit was dismissed against Miss Edith St. Germain, and is also asking that the amount of the award be increased. Boudreaux has taken no appeal and has made no appearance in this court.
Without reciting in detail the pleadings in the case, the contention of the litigants may be summed up as follows: The plaintiff claims that he was walking south on the west side of St. Antoine Street on the sidewalk some 50 feet below the intersection of this street with Simcoe Street, when he was struck by the car driven by Boudreaux after the Boudreaux car had collided with the St. Germain car in the intersection and had spun around twice after the collision and ran over on the sidewalk where plaintiff was walking, striking his right leg and breaking both the tibia and fibula of this leg.
The defendants, Boudreaux and Miss Edith St. Germain, filed separate answers and are represented by different attorneys. Miss St. Germain admits that the car driven by her collided with the Boudreaux car in the intersection, but she contends that this collision in the intersection was not caused by any fault or negligence on her part, but was the result of the gross *Page 311 
negligence of Boudreaux in driving his car into the intersection at an excessive speed and without having his car under proper control. Boudreaux also admits the collision of his car with the car driven by Miss St. Germain, but he seeks to place the blame for the collision entirely on Miss St. Germain by alleging and attempting to prove that he had the right of way and had almost crossed the intersection when his car was struck on its left rear by the car of Miss St. Germain, which collision knocked his car around and caused it to zig-zag and spin around twice and strike plaintiff before coming to a stop. Boudreaux alleges that he was driving at a lawful rate of speed, but that Miss St. Germain was driving at an excessive and unlawful rate of speed.
In supplemental answers filed by the defendants, they pleaded contributory negligence on the part of plaintiff in that he was riding a bicycle on the left hand, or wrong side of St. Antoine Street coming north toward the intersection when he was struck, and failed to use proper means to avoid the Boudreaux car. The trial judge found, and we concur in his finding, that plaintiff was not riding a bicycle on the street when he was struck by the Boudreaux car, but he was walking on the sidewalk where he had a right to be. As plaintiff was not guilty of any negligence, the question is whether or not his injuries resulted from the joint, combined and concurrent negligence of Boudreaux and Miss St. Germain, causing the collision in the intersection which set in motion the uncontrolled movements of the Boudreaux car.
The trial judge made the following statement in his reasons for judgment:
"The Court's conclusion is that plaintiff was walking on the sidewalk when he was struck by Luke Boudreaux's automobile; that Boudreaux was operating his automobile at a dangerous rate of speed before and at the time he entered the intersection and when his car collided with the car of Miss St. Germain which was the proximate cause of the injury to plaintiff; that Miss St. Germain approached and entered and proceeded along the intersection travelling at a lawful rate of speed and with due caution and circumspection; that while Boudreaux had the right of way, he was not relieved thereby of the obligation of being on the alert, having his car under control, and operating it at a lawful and reasonable rate of speed. The fact that the St. Germain car was stopped within six or eight feet of the point of collision, is a strong corroboration of the driver's testimony that she was traveling at a reasonable rate of speed, while the distance travelled by the Boudreaux car after the collision, the fact that it spun around twice, is a physical fact strongly corroborative of the testimony to the effect that Boudreaux's car was travelling at a dangerous rate of speed."
As the trial judge found that the proximate cause of the collision and resulting injury to plaintiff was the negligence of Boudreaux, and as Boudreaux has not appealed from this finding against him, the remaining question for us to decide in this connection is whether or not the trial judge was in error in exonerating Miss St. Germain from any fault in causing the collision of the two cars in the intersection. The plaintiff invoked, as he had a right to do under the circumstances, the doctrine of res ipsa loquitur, and he now contends that, as each defendant places the blame for the collision on the other, the result is that neither has given a satisfactory explanation for the collision — the evidence of one neutralizing that of the other — thus leaving both of them to bear the blame under the above doctrine, citing in support of this contention the case of Weddle v. Phelan et al., 177 So. 407, 410, where we said: "The plaintiff in alleging and proving the happening of the accident under circumstances indicating that the accident would not have happened but for the negligence of either the bus driver or the truck driver, or both, had the right to rest on this prima facie showing of negligence, and it then became the duty of the drivers of the vehicles to exonerate themselves from the presumption, or inference, of negligence in the operation of their respective vehicles."
And in the cited case, we held that neither the bus driver nor the truck driver had exculpated himself from blame for the accident, the evidence produced by one balancing or offsetting that offered by the other, thus leaving a prima facie case against both under the res ipsa loquitur doctrine, after plaintiff had proved that the accident resulted from the negligence of one or both of the drivers. But in the present case, the trial judge found that Miss St. Germain had exculpated herself from negligence as a contributing cause of the collision. *Page 312 
If that finding is correct, she cannot be held liable.
Boudreaux was going south on St. Antoine Street and Miss St. Germain was going west on Simcoe Street. Miss St. Germain says she was going less than 20 miles per hour as she approached the intersection; that she looked to her right up St. Antoine Street, and she could not see any car coming from that direction within her range of vision around a store or market on the corner; that she could see up St. Antoine Street about 75 feet when she looked and saw no car coming; that she looked to her left and saw no car coming from that direction to interfere with her crossing, whereupon, she entered the intersection and again looked to her right and saw Boudreaux coming down the street to her right at a fast rate of speed; that she pulled her car slightly to the left and applied her brakes, but the Boudreaux car sideswiped the right front part of her car, the right front end of her car coming in contact with the left rear part of the Boudreaux car near the center of the intersection. She brought her car to a stop within 6 or 8 feet after the impact, and the Boudreaux car continued on down the street, zig-zagging and spinning around coming to a stop facing the sidewalk some 75 feet below the intersection.
Mrs. Benoit, a witness for Miss St. Germain, heard and saw the Boudreaux car as it came down St. Antoine Street. This witness was in the bathroom of her mother's home on St. Antoine Street, and she says that the Boudreaux car came "roaring" down the street. She also saw the St. Germain car as it entered the intersection and looked as she thought an accident would likely happen, and she heard the noise from the two colliding cars. She says that the Boudreaux car was going twice as fast as the St. Germain car.
There were some other witnesses who claimed to have seen the accident. Some of them testified that the two cars were going about the same speed, while others testified that the St. Germain car was going faster than the Boudreaux car. We do not deem it necessary to analyze the conflicting testimony of these witnesses as we think there are at least two physical facts which indicate clearly that Boudreaux was driving at an excessive speed. The first of these is the undisputed fact that his car spun around twice after the collision and continued on down the street a distance of 50 to 75 feet from the point of the impact and came to a stop crosswise the street, while Miss St. Germain stopped her car within 6 or 8 feet after the impact. It cannot be claimed that the St. Germain car knocked the Boudreaux car this distance and caused it to spin around and zig-zag as it did for the reason that Miss St. Germain was going west, and any force applied from her car against the other car would have knocked the Boudreaux car further out Simcoe Street and not to the left down St. Antoine Street.
The preponderance of the evidence indicates that the impact took place near the center of the intersection, and the damage on the right front fender, bumper and grill of the St. Germain car shows that it was sideswiped from its right front toward the left by the rear left part of the Boudreaux car, as the former car was pulled to its left by Miss St. Germain as she claims.
Regardless of the fact that Boudreaux had the right of way, Miss St. Germain entered the intersection first and had pre-empted the intersection when Boudreaux entered it at an excessive speed. As Miss St. Germain looked to her right as she approached the intersection and saw no cars coming from that direction for a sufficient distance to interfere with her crossing in safety, she had a right to assume that a car coming from her right down St. Antoine Street would proceed at a lawful rate of speed and in a proper manner. Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 2, § 1038, p. 230 et seq.; Hamilton v. Lee et al., La.App., 144 So. 249; Sweeney et al. v. New Orleans Public Service, Inc., et al., La.App., 184 So. 740.
As we fail to find any negligence on the part of Miss St. Germain that contributed to the accident and injury, the judgment in this respect will be affirmed.
However, we think the amount of the award in favor of plaintiff against Boudreaux should be substantially increased. The plaintiff is a colored man, 55 years old at the time of the accident, and was earning wages in a butcher shop equivalent to $9.50 per week. He suffered a comminuted fracture of both bones of his right leg, and he was in the hospital over three months and then went home and stayed in bed two more weeks. He had a cast on his leg at the time of the trial and was still going to the hospital for treatment about a year after the accident. He was walking with *Page 313 
crutches at the time of the trial, and the doctor stated that the cast could be taken off in a month or so after the date of the trial, but plaintiff's leg would be another year getting well, and there would continue to be a disability in that leg which the doctor estimated at from 20 to 25 per cent. This leg is about one-half inch shorter than the other leg, and there are four fragments of bone over-lapping, with some angulation in the leg.
The nature and extent of the injury in the present case is very similar to that in the recent case of Hare v. New Amsterdam Casualty Co. et al., 1 So.2d 439, where we affirmed an award of $4,000. The only important difference in the facts of that case and the present case is that in the cited case the plaintiff was a younger man and making more wages at the time of his injury than the plaintiff in the present case, and for that reason the duration of the permanent disability would last for a longer time under the life expectancy table than would the plaintiff's permanent disability continue in the present case and at a lower wage scale. Considering all these factors, we have decided to increase the award to $3,000 in this case.
For the reasons assigned, it is ordered that the judgment appealed from be amended by increasing the award in favor of plaintiff and against Luke Boudreaux from a total of $1,265 to a total of $3,000; and as thus amended, the judgment is affirmed at the cost of the defendant, Luke Boudreaux, in both courts.