106 So.2d 471 (1958)
INSURANCE CO. OF NORTH AMERICA and United States Fire Insurance Co.
v.
William C. GORE, Harold M. Eiswirth, and Joseph G. Prevost D/B/A Liberty Bell Cab Co. and Nola Cabs, Inc.
No. 21108.
Court of Appeal of Louisiana, Orleans.
November 17, 1958.
*472 Henry L. Oulliber, Jr., and Robert J. Pitard, New Orleans, for Nola Cabs, Inc., Harold M. Eiswirth and Joseph G. Prevost, defendants-appellants.
Bienvenu & Culver and H. F. Foster, III, New Orleans, for plaintiffs-appellees.
McBRIDE, Judge.
On May 13, 1955, about 2 o'clock a. m., two automobiles collided at the intersection formed by St. Philip Street and the uptown-bound traffic lane of North Rampart Street, which caused the driver of one of the cars to lose control thereof and the automobile ran into a building located on the downtown-river corner of the intersection formed by said two streets causing the damage thereto of $259.50. The owner of said building subrogated all claims he may have against the defendants to the plaintiffs in this suit, and they, as subrogees, are now seeking to recover the amount of said damage, impleading as defendants Gore, the owner and operator of the automobile which ran into the building, Prevost, the owner of the other automobile which is a taxicab, Eiswirth, its driver, and Nola Cabs, Inc., the liability insurer of the cab, all in solido.
All defendants, except Gore, answered the suit, but Gore did appear as a witness at the trial in the lower court. He endeavored to cast blame for the accident on Eiswirth, who drove the cab, while Eiswirth seeks to place the blame on the shoulders of Gore.
After the trial below, judgment was rendered in favor of plaintiffs as prayed; this appeal was taken by Prevost, Eiswirth, and Nola Cabs, Inc.; Gore took no appeal.
We are dealing with a case where the property of an innocent party is damaged as a result of an accident between two automobiles, the owners and operators of which are made solidary defendants. Under such circumstances the burden of proof is upon each defendant to exculpate himself from negligence, and each must be deemed guilty of negligence per se in the absence of any showing to the contrary. Marquez v. Miller, La.App., 64 So.2d 526; Bonner v. Boudreaux, La.App., 8 So.2d 309; Armstrong v. New Orleans Public Service, Inc., La.App., 188 So. 189; Weddle v. Phelan, La.App., 177 So. 407.
Gore was driving on St. Philip Street proceeding in the general direction of the Mississippi River, and his story is that upon reaching Rampart Street he stopped in obedience to the "stop" sign which confronted him, and that he looked to his left and noticed but one vehicle approaching and that was the taxicab driven by Eiswirth which was about one block away. He attempted a crossing of the intersection and reached the neutral ground which bisects North Rampart Street, but was forced to stop at that point because there was another car ahead of him. He maintains his car was stopped in such a position on the neutral ground that the rear portion protruded out into the traffic lane of Rampart Street in which the taxicab was traveling and the taxicab struck his car on its left rear causing him to lose control thereof, the result of which was that his automobile ran into the building on the other side of the street. Gore states the *473 crash came just as he moved forward behind the car ahead of him.
Eiswirth's version of what happened is entirely different. He testified he was driving up Rampart Street about 20 to 25 miles an hour, and that when about 20 to 25 feet from the intersection, he observed the reflection of the headlights of an automobile on St. Philip Street. It is shown that a building located to Eiswirth's right would obliterate the vision of a motorist on Rampart into St. Philip Street, and we are convinced Eiswirth is correct in stating he could only see the reflection of Gore's headlights as he approached the intersection. Eiswirth went on to say he believed the car on St. Philip Street would stop in obedience to the traffic sign, but that when the cab was about ten feet from the intersection, Gore's car suddenly darted out into North Rampart Street directly in front of the cab, and he could not avoid running into it notwithstanding his application of the brakes. The crash came in the middle of the intersection. Eiswirth insists Gore did not stop before emerging into the North Rampart Street traffic lane.
Ordello, a disinterested witness, was driving on the other side of North Rampart Street going in a downtown direction, and his testimony is that he saw the cars crash on the other side of the street. He first noted the taxicab when it was 25 feet before reaching St. Philip Street, at which time his own automobile was also about the same distance from St. Philip Street.
Ordello corroborates Eiswirth in the speed of the taxicab, his estimate being that it was traveling about 25 miles an hour. Ordello declares he saw the Gore automobile just about the time it reached Rampart Street and that no attempt was made by its driver to stop and it was struck by the taxicab in the middle of the intersection and it then ran into the building. He said Gore was driving 40 to 45 miles an hour. However, his estimate of Gore's speed is not too impressive because he only saw the automobile travel a few feet and could hardly say with any degree of accuracy how fast it was moving.
Regardless whether Gore travelled 45 miles an hour or at a lesser rate, we are convinced that Ordello was truthful in saying he made no stop at the intersection but came on out into Rampart Street directly in the path of the taxicab. However, whether a stop was made is unimportant because Gore emerged into the intersection and brought about the dangerous situation.
The trial judge, in the reasons for judgment, concluded that both drivers were guilty of negligence in that Eiswirth was not keeping a proper lookout and failed to see the Gore car until the back end thereof reached the middle of the street and because Gore made entry into the intersection in the path of the oncoming taxicab. We believe the learned judge below fell into error in disregarding the testimony of Ordello, the independent or disinterested witness. The reason why Ordello was not believed was because the judge thought he made conflicting statements. The reasons for judgment state that Ordello testified that he first observed the Gore car when it was about 25 feet from the corner, but subsequently made the statement that the Gore car was about entering Rampart Street when he first saw it.
A reading of Ordello's testimony shows this to be a completely incorrect construction of what the witness testified to. What he stated was he first saw the taxicab when it was 25 feet from the corner and he was the same distance from the corner traveling on the other side of the street and at that time the Gore car was at the intersection. We fail to find any inconsistency in Ordello's testimony as to the location of the Gore car when he first noticed it.
The driver of the taxicab was not guilty of negligence in the respect mentioned by the trial judge or in any other. He was traveling along Rampart Street at a lawful and reasonable speed, and the Gore car emerged from the intersecting street directly *474 in his path when he was but a few feet from the intersection and created a sudden emergency. Due to the "blind corner," he had no reason to suspect that Gore did not intend to stop, and was within his rights in relying on the fact that it was the duty of Gore to obey the traffic sign.
Counsel for plaintiffs in endeavoring to make out a case of negligence on the part of Eiswirth, argue that when Eiswirth observed the reflected glare or beam of the headlights on St. Philip Street, he was adequately forewarned of the possibility of an impending accident. In support of the contention they cite Macaluso v. Herrin, La. App., 52 So.2d 581, which has absolutely no application here, for the reason that the intersection in that case was composed of streets of equal dignity, neither motorist having the statutory right of way such as Eiswirth had in the instant case.
The stop sign officially erected on St. Philip Street had the effect of making North Rampart a through or right-of-way street. Hooper v. Toye Bros. Yellow Cab Co., La.App., 50 So.2d 829.
The law of this state with reference to a stop sign and right of way at an intersection such as the one at which the accident took place is clearly established by the Supreme Court. In Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849, 851, the Court said:
"The law in this state is well settled that a motorist who is proceeding on a right-of-way street, upon approaching an intersection where traffic is required under a city ordinance, and is warned by stop signs, to come to a complete stop before entering the intersection, should not be held to the same degree of care and vigilance as if no ordinance existed or stop signs were erected. The danger at such an intersection is less than that at a corner where no stop signs have been erected, and therefore less care is required of the driver on a favored street. The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law. See Termini v. Aetna Life Ins. Co., La.App., 19 So.2d 286; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Glen Falls Ins. Co. v. Copeland, La.App., 28 So.2d 145. See also Mayfield v. Crowdus, 38 N.M. 471, 35 P.2d 291; 2 Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., sec. 1032, pp. 216, 217."
In Brown v. Gonzales, La.App., 77 So.2d 887, recently decided, we emphatically held that a driver on a through street had a right to assume that the other driver traveling on the intersecting street would obey the stop sign even though the driver on the through street could see the illumination of the headlights on the approaching automobile.
We are not reversing the judgment on the question of the veracity of the witnesses, but we have a case where the testimony of a witness has been misconstrued and was disregarded because it was thought the witness was inconsistent. We conceive it to be our duty to alter the situation and decide the case on our appreciation of the evidence.
For the reasons assigned, the judgment insofar as it runs in plaintiffs' favor against Harold M. Eiswirth, Joseph G. Prevost, doing business as Liberty Bell Cab Company, and Nola Cabs, Inc., be and the same is hereby reversed and the suit of plaintiffs as against said defendants is dismissed at plaintiffs' cost; in other respects the judgment is affirmed.
Reversed in part; affirmed in part.