CULPEPPER, Judge.
This is a tort action arising out of an intersectional collision. After a jury trial, judgment was entered for the defendant, dismissing plaintiff’s suit. Plaintiff now appeals.
The principal issue is whether defendant’s insured, driving on the right of way thoroughfare, was guilty of any negligence causing the collision and the resultant personal injuries and damages suffered by the insured’s two minor children, who were passengers in the insured’s automobile.
The situs of the accident is the intersection of blacktopped Louisiana Plighway 368, running generally east and west, and a parish gravel road, running north and south, in a small unincorporated community in Acadia Parish known as Tepe Tate. Near the northeast corner of this intersection is a gasoline refinery. On the northwest corner is a gasoline filling station. On the southeast corner, there is a grocery store facing the gravel road approximately 1000 feet from the intersection, and a dwelling on the highway, about 500 feet from the corner. There are from ten to fifteen dwellings or buildings scattered in the community. Stop signs are located on the gravel road requiring vehicles thereon to stop and yield the right of way to vehicles on the highway. There is also a sign reading “Plant Entrance” located on the highway approximately one quarter of a mile east of the intersection, but there is no entrance to the refinery directly from the highway. Both the highway and the gravel road are straight and level as they approach the intersection in question.
On a clear, dry day, December 21, 1958, at about 4:00 p. m. defendant’s insured, George Caraway, Jr., was driving in a westerly direction on said Highway 368 approaching the intersection. Passengers were his wife on the front seat and his two little girls on the back seat. The version of the accident given by Caraway at the trial was: that he traveled that route about once a week and was familiar with this intersection; that he did not actually know of the stop signs on the gravel road before the accident (however, we are of the opinion his testimony as a whole shows he knew that the highway had the right of way) ; that he had been driving about 60 miles per hour, but on approaching the intersection slowed to 50 to 55 miles per hour; that when he reached a point 200 to 300 feet from the intersection he saw, for the first time, a pickup truck “coming into the intersection” from the gravel road to the south, that is, Caraway’s left; that he did not know whether the truck had stopped for the stop sign and could not estimate how fast the truck was going; that on seeing the truck he tried to turn to the right to avoid a collision but did not recall applying his brakes; that when he reached the intersection his right wheels were off the highway and at that point the *903 front of the track struck the left center of his automobile; that the truck came to rest very near the point of impact but Caraway’s car went on some distance, turning over several times. Mrs. Caraway received injuries from which she subsequently died. Mr. Caraway and the two little girls received injuries.
Caraway testified that he did not recall anything which obstructed his vision of the approaching truck and did not know why he didn’t see it sooner “unless I was looking to the right over to the plant that sits there to the right.”
At the conclusion of the testimony of Mr. Caraway, the defendant insurer sought to introduce in evidence for purposes of impeachment, a prior contradictory statement given by Caraway to the adjuster for his own insurer. Although the trial court did not allow the introduction of this statement, it is in the record attached to a Bill of Exceptions, and we think it is admissible, at least insofar as it does show prior contradictory statements. In the statement, Caraway does not mention that he might have been looking to the right toward the plant just prior to the collision. Furthermore, in the statement Caraway estimated the speed of the track at 40 miles per hour, but still said that he did not see the truck until it “was just getting onto the pavement of the highway.”
Also introduced in evidence, for purposes of impeachment of Caraway’s testimony, is the entire record in another suit in which Caraway, individually and as tutor for the minors, sued the truck’s liability insurer. The petition in that suit, sworn to by Caraway, alleges that the sole cause of the accident was the negligence of the truck driver. In a settlement of that suit, Caraway received $10,400, individually, and $8,100 as tutor.
Unfortunately, Mr. Klump, the driver of the pickup truck, did not testify during the trial or otherwise. The record shows that he was summoned as a witness for the plaintiff, but the summons was returned with a notation by the sheriff that Mr. Klump lived in an adjoining parish. One witness testified that he thought Mr. Klump was sick, but there is no further explanation as to why his testimony was not obtained. Therefore, the only evidence in the record with reference to the manner in which the Klump vehicle approached the intersection, is the testimony and the pretrial statement of Mr. Caraway.
The applicable law as to the duty of the driver on the .right of way thoroughfare is set forth in the leading Supreme Court case of Koob v. Cooperative Cab Company, 213 La. 903, 35 So.2d 849 as follows :
“The law in this state is well settled that a motorist who is proceeding on a right-of-way street, upon approaching an intersection where traffic is required under a city ordinance, and is warned by stop signs, to come to a complete stop before entering the intersection, should not be held to the same degree of care and vigilance as if no ordinance existed or stop signs were erected. The danger at such an intersection is less than that at a corner where no stop signs have been erected, and therefore less care is required of the driver on a favored street. The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law. See Termini v. Aetna Life Ins. Co. et al., La.App., 19 So.2d 286; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Glen Falls Ins. Co. v. Copeland, La.App., 28 So.2d 145. See also Mayfield v. Crow- *904 dus, 38 N.M. 471, 35 P.2d 291; 2 Blash-field, Cyclopedia of Automobile Law and Practice, Perm.Ed., sec. 1032, pp. 216, 217.”
A recent decision of this court following the above rule of law and citing many cases from this and other courts of appeal, is Benoit v. Vincent, La.App., 132 So.2d 75.
Plaintiff appellant’s first argument is that the above quoted rule of law is not applicable because Caraway did not know of the stop signs before the accident. Our answer to this argument is that even accepting as true Mr. Caraway’s testimony that he did not actually know of the stop signs, we think a consideration of his testimony as a whole shows clearly that he knew he had the right of way and this justifies the application of the above rule of law.
Plaintiff’s next argument is that this case does not fall within the doctrine of the Koob case, supra, but instead is controlled by Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535 and other similar cases in which an increased degree of care was imposed on even the superior driver because he approached a particularly dangerous intersection. Plaintiff argues that the intersection in the instant case was unusually dangerous because of the gasoline plant and the “populated area.” Plaintiff contends that Mr. Caraway should have reduced his speed to 35 to 40 miles per hour and proceeded with great care.
We cannot agree with this contention. This was not a thickly populated area but simply a few scattered buildings in an unincorporated community. The “Plant Entrance” sign was located on the highway about a quarter of a mile east of the intersection. The entrance to the plant was not on the highway. One of the pictures filed in evidence appears to show the entrance to the plant located on the gravel road north of the intersection. There are no signs indicating “slow” or “caution”. The speed limit was 60 miles per hour. Under these circumstances we do not think that this was an unusually dangerous intersection so as to cause the doctrine of the Randall case to be applicable here.
Plaintiff’s next argument is that this was an “open intersection”, that is, there was no obstruction to Caraway’s view of the Klump truck as it approached on the gravel road. Defendant, on the other hand, contends that this was a blind intersection, that is, that Caraway’s view of the approaching Klump truck was completely obscured by high weeds. The evidence is conflicting on this factual issue but we think a preponderance thereof shows that there were weeds from three to four feet in heighth which at least partially obscured Caraway’s view of the approaching truck until it reached a point about 25 feet from the intersection. This means that Caraway could have seen at least the top of the truck if he had been observing carefully.
Under the law, as set forth in the above quotation from the Koob case, there are two questions which must be answered here: (1) Should Caraway have seen the Klump truck approaching the intersection, and (2) Should he have seen the truck was not going to yield the right of way, in time for Caraway to avoid the accident. We do not believe that either one of these questions has been answered with sufficient legal certainly, because the evidence does not show the manner in which the truck approached the intersection.
As stated above, Mr. Klump did not testify. The only evidence in the record with reference to the driving of the Klump vehicle before the accident, was the testimony of Mr. Caraw'ay. He stated at the trial that he did not see the truck until it was entering the intersection and that he could not estimate its speed. In his statement given before the trial, Caraway estimated the speed of the truck, when he first saw it, at 40 miles per hour. Obviously, this version of the facts cannot be correct. If Caraway, traveling at a speed of from 50 to 55 miles per hour, first saw the truck when he *905 was 200 to 300 feet from the intersection and if, at that time, the truck was traveling 40 miles per hour and was entering the intersection, it is apparent that the truck would have completely crossed the intersection before the Caraway vehicle arrived there. The two vehicles could not have reached the point of impact simultaneously, unless the truck was going slower than 40 miles per hour or it was farther from the intersection when Caraway first saw it. If, when Caraway should have first seen the truck, it was going slow enough and/or was far enough away from the intersection to stop and yield the right of way, then Caraway, even if he had seen the truck, would have had a right to assume that it was going to stop.
Clearly the burden was on the plaintiff to prove, that Caraway should have seen the truck was not going to stop and also that he should have made this observation in time to avoid the accident. There being no evidence in the record to show the actions of the Klump vehicle as it approached the intersection, plaintiff has failed to prove these essential elements of his case.
In view of the above conclusions which we have reached, it is unnecessary for us to discuss plaintiff’s contention that the trial judge was in error in using the term “gross negligence” in charging the jury that if it found both Caraway and Klump guilty of “gross negligence” it should return a verdict for the plaintiff. Counsel for the plaintiff argues that under this charge the jury thought it had to find “gross negligence” on the part of Caraway before it could return a verdict for the plaintiff. Although the general charge correctly defines actionable neglience as being any degree of fault causally related to the accident, we agree with counsel for the plaintiff tljat it was improper for the district judge to use the term “gross negligence.” However, despite this error, it is our opinion that the evidence in this record amply supports a finding for the defendant.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.