CHRIS PERESTERAS v. PHILIP LOMBARDO, Appellant

---

(November 30, 1925, Opinion and Decree)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Evidence—Par. 340, 351.**

The testimony of three witnesses accepted by the trial court will outweigh the testimony of one witness.

2. **Louisiana Digest—Evidence—Par. 24, 48; Builders and Buildings—Par. 18, 30.**

It is presumed that the owner has consented to extra work when it is so great that it must have been done with his knowledge or when it had not been foreseen.

Appeal from First City Court, Hon. W. V. Seeber, Judge.

This is a suit under a building contract. Defendant filed an exception of vagueness and another exception that plaintiff failed to allege whether a contract or quantum meruit was the basis of the suit. The exceptions were overruled. There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Jas. Casey, of New Orleans, attorney for plaintiff, appellee.

Theo. Cotonio, of New Orleans, attorney for defendant, appellant.

CLAIBORNE, J.    This is a suit on a building contract.    The plaintiff alleged that "under verbal direction of the defendant" he erected two smoke stacks over the defendant's place of business at No. 1210 Decatur Street furnishing the labor and material, as fully detailed in the itemized account annexed.

The annexed account is as follows:

Re-rivet stack furnishing materials, etc., (then follows a detail of materials furnished) _____$ 12.90
Labor 10¼ hrs., mechanic and helper   21.52
400 feet guy line wire_____   7.00
Car fare _____    .28
Put up stacks (2) and also take down stacks, rigging, drayage, all work complete erecting stack also   95.00

$136.70

The defendant excepted that the petition was vague and indefinite, and that the plaintiff failed to allege whether he sued upon a contract or a quantum meruit.

It seems to us that the petition gives to the defendant all the details of plaintiff's claim sufficient to enable the defendant to defend the suit.

The plaintiff alleged that he made the work "under verbal direction of the defendant". This clearly indicates a verbal contract to do the work and a quantum meruit as to price.

The exceptions were properly overruled.

For answer the defendant denied owing the plaintiff the amount claimed or that he employed the plaintiff to do the work mentioned in plaintiff's petition.

Further answering defendant averred that he is engaged in the bakery business; that one of the chimneys of his bakery required re-adjusting; that he employed plaintiff to do the work which plaintiff agreed to do for $30, which defendant admits owing and has tendered to the plaintiff who refused to accept the same prior to the suit; that

while plaintiff was doing the work he had contracted to do, by his negligence and want of care or that of his workmen, he allowed the smokestack to fall, and in its fall to strike another smokestack, and to cause it to fall, making two smokestacks instead of one which the plaintiff had to rebuild but for which defendant cannot be charged.

There was judgment for plaintiff and defendant has appealed.

The sole questions are: Did plaintiff contract for $30 and did the smoke stack fall through his fault?

1st. The plaintiff testifies that he made a contract for $30 to hold up the stack and to put a new foundation under it. The defendant admits it.

2nd. The facts of the case are that the defendant employed an old man named Toney Constant to paint the smoke stacks on the roof of his bakery.

Toney says:

"I put my tackle up and started to work up from the bottom and left spaces between my legs and pull myself up with the rope. I paint six feet up and then six feet down. I was painting when some of the bricks fell and some one called me to get down as I would kill myself, so I came down; I stopped working and went to Mr. Lombardo and I tell Mr. Lombardo the bricks fell down."

Defendant inquired of Toney if he would do the repairs. Toney declined, but recommended plaintiff. Defendant· agreed with plaintiff to raise the stack and repair the foundation for $30.

Plaintiff started on the work on the next morning. He sent three riggers there. While the men were on the roof, and engaged in gathering the necessary tools and materials, and before they had touched the stacks or the wires supporting it, the stack that plaintiff was to raise, fell of itself, presumably from the wind or from the defective chimney foundation, and in falling struck the guy wires of the adjoining stack and brought it down. Defendant sent for and engaged the plaintiff. In the words of Toney, who was defendant's witness:

"Q. Did Lombardo tell Chris to put the stacks up?
"A. Yes, he said, do nice job, put the stacks up and put·new guide wires and new spark arresters."

Did the plaintiff's workmen cause the falling of the stack?

Three riggers were employed by plaintiff to execute the work.

Fournier, Danridge and Conniff. They all three testified that they had not yet started on the work when the stack fell; that they were gathering their material on the roof when the stack fell without cause that they could attribute, except the wind or the dilapidated condition of the chimney foundation; that they were at a distance from the guy wires or stiff leg and did not touch them nor the foundation of the chimneys. Toney testifies that "the stack fell down on account of the bricks giving away; Chris did not knock the stack down".

The only witness to contradict that testimony is Nuncio Mario who lives next door to the defendant's bakery. She says:

"I was taking clothes off the line, and I was looking at them bringing up a big post on end of the roof, and they brought it up to the end of the roof with the rope and laid it alongside the edge of the roof, and all of a sudden the post touched the end of the wire and the pipe fell over."

She was on the gallery at the time she saw the three men on the roof.

This same witness testified that two people came to see her on behalf of plaintiff about testifying.

"Q. Did you tell them about the colored man touching the wire?
"A. No, sir. He asked me if I thought his men touched the pipes on purpose, and I said I don't know.

"Q.  Mr. Peresteras asked you if his men had done it on purpose?

"A.    Yes, sir.

"Q.  Did you tell him his men had knocked it down then?

"A.   No, sir * * * It was one of her girls who told Toney to be careful.  They only asked me one question if I was sure these men had knocked the stack down and I said I don't know.

"Q.  Did you tell him the men touched the wire?

"A.   No, sir.

"Q.  Then you swear the wire touched did not break?

"A.   Yes."

The trial judge did not consider that testimony sufficient to destroy the evidence of the three riggers; neither do we.

We must believe therefore that the stack fell by reason of the dilapidated foundations or from some other cause not brought home to the plaintiff.

We must presume that the defendant authorized the plaintiff to do all the work on the two stacks.

The law is that it is not necessary for a contractor to prove an order for extra work "in a case where the alteration or increase is so great, that it cannot be supposed to have been made without the knowledge of the owner, and also when the alteration or increase was necessary and had not been forseen".  C. C. 2764 (2735.)

"To receive goods from a merchant without any express promise and to use them, implies a contract to pay the value."  C. C. 1816 (1810.)

"No one ought to enrich himself at the expense of another."  C. C. 1965 (1960.)

The value of the work done by plaintiff is established by himself.  There is no testimony to contradict it.

Judgment affirmed.