No. 852

First Circuit

THOMAN v. DELIBERTO

(October 7, 1931. Opinion and Decree.)

Rownd & Warner, of Hammond, attorneys for plaintiff, appellant.

Ellis, Ellis & Ellis, of Amite, attorneys for defendant, appellee.

MOUTON, J. Vincent Deliberto was driving a truck belonging to his father, defendant, southward on Cherry street in Hammond, which crosses East Charles street running east and west.

Thoman, plaintiff, was driving a car on East Charles street, eastward.

A collision occurred between the car and the truck in the intersection of the two streets, south of the center.

Plaintiff is suing defendant for personal injuries and damages to his car suffered in the collision.

Judgment was rendered rejecting his demand, from which he appeals.

Plaintiff testifies that he first saw the truck when he was about ten feet from the intersection and was then traveling between twelve and fifteen miles an hour. At that time, he says, the truck was fifteen or twenty feet from the crossing and was going between thirty-five and forty miles an hour.

As neither street was a right of way street, plaintiff should not have attempted to cross the intersection in the pathway of a truck going at that speed, and at that time fifteen or twenty feet from the northern line of the intersection. He was traveling, he says, at about twelve or fifteen miles an hour, and should have immediately realized that he could not negotiate the crossing in time to avert an accident. In venturing to go across in the face of such imminent danger, when he could easily have stopped his car which he testifies was moving at the slow speed to which we have referred, plaintiff failed to exercise the ordinary care which the situation demanded, and was therefore at fault when he drove into the intersection.

We shall not, however, base our finding on that issue, but will pass to the dominant question in the case, which is as to which of the two vehicles first entered the intersection, as it is well settled that the one which enters first has the right to proceed across whether the street he enters is a right of way street or not.

Plaintiff swears he entered first. Vincent Deliberto, driver of the truck, says he had almost passed the center of the crossing when plaintiff's car ran into the back wheel of the truck. In that statement he is corroborated by Mitchel, a negro, who was sitting in the cab of the truck on Deliberto's right, and by Herbert, another colored boy, who was sitting between them. According to the testimony of these three witnesses the truck entered the intersection first. All three say also that when the truck reached the crossing it was going at about fifteen miles an hour, in that respect flatly contradicting the evidence of the plaintiff, which was to the effect that it was then traveling some thirty-five or forty miles an hour.

Another witness, Sugar Gorman, colored, says he was at the corner of East Charles and North Cherry streets when the accident occurred. His testimony is likewise that the truck had about passed the center of the intersection when the car ran into its back wheel. According to his testimony, the truck entered the crossing first.

Mr. Finn, witness for plaintiff, who did not see the collision but heard the crash and came up to the scene of the wreck immediately after its occurrence, says he did not see Sugar Gorman around there at the time. It appears that Mr. Finn saw plaintiff drop on the ground after the collision and went to his rescue. No doubt he was under some excitement, was looking towards assisting plaintiff, and gave little attention in reference to the presence of any one else at the time. The fact is he said there was one negro in the truck while the proof unquestionably shows that there were two. This shows that, in the excitement which usually occurs at incidents of this character, those present and proffering assistance may overlook the presence of others.

In testifying as to those who were present, plaintiff says also that, besides Mr. Finn, a negro boy, and Deliberto in the

truck, there was no other soul at the scene. Plaintiff and Finn were therefore both mistaken in that respect, as it is certain there was another negro in the truck.

This shows how easily the presence of a party may escape the notice of persons caught in a wreck, or who are suddenly assisting others in emergencies of that character.

The judge below, we presume, believed the account given of the occurrence by Gorman, and we have been unable to find in the facts and circumstances of the case any evidence that could lead us to a contrary conclusion. Even if we were to disregard his testimony, we would still be confronted with testimony of Vincent Deliberto, driver of the truck, and the two negro boys who were sitting next to him who testified that the truck was in the intersection when the car entered.

Counsel for plaintiff refers to certain discrepancies in the testimony of these three witnesses. In most all cases of sudden emergencies there is seldom perfect harmony in the testimony of those who happen to see the accident, due usually to the different positions occupied by the witnesses at the time. Here, for instance, Deliberto says he looked to his right and left when he got to the crossing, and did not see plaintiff's car, which it is shown was coming from the west. Mitchel says he saw it just before it reached the west line of the crossing. This can be explained by the fact that he was sitting on the right of Deliberto, the driver, and was in a better position to see the auto which was advancing next to him in its course eastward.

Herbert, who was sitting between Deliberto and Mitchel, says he did not see plaintiff's car until it struck the truck or immediately thereafter.

The different positions which these witnesses occupied in the cab of the truck account for the fact that they did not all see exactly alike as to what then occurred. These unimportant variations in their testimony show, however, that there had been no understanding between them to give a concocted story of the collision for the benefit of the defendant.

Here we have only one witness testifying he entered the crossing first. On this fact, the pivotal issue, four for defendant testify he had entered first. True, the absolute test of the probative value of testimony does not depend on the number of witnesses, a fact, however, which is entitled to some consideration in the determination of a case. Although we recognize that such is not an absolute test, where, as in this case, there are no facts or circumstances destroying the value of the testimony of such witnesses, and the lower court has given credence thereto, the appellate court, which does not know the witnesses and is deprived of the advantage of seeing and hearing them testify, will not interfere in the exercise of its appellate jurisdiction with the finding below and indulge in the reversal of a judgment grounded on a question of fact, which is the case here.

The judgment is therefore affirmed.