We granted a rehearing in this case for the dual purpose of considering certain remarks contained in our original opinion, which counsel for the defendant, Marcomb, claim to be erroneous, and to review our conclusion that the co-defendants are joint tortfeasors and therefore liable to plaintiff, in solido.
[1] In our original opinion (see 17 So.2d 835, at page 837), we stated that, after a careful reading of the record, we were 11 utterly unable to reach an independent conclusion concerning fault" and that, if we did not have the benefit of the finding of the district judge, we would have difficulty in rendering a decree. Counsel for Marcomb contend that our affirmance of the judgment of the district court holding their client liable, when we, ourselves, were unable to discern that he was at fault, is patently erroneous since, in view of our constitutional duty, Sec. 29 of Art. VII of the Constitution of 1921, to review factual questions as well as legal ones, we should have been convinced that plaintiff and the other defendant, Toye Bros. Yellow Cab Co. established negligence on the part of Marcomb by a clear preponderance of the evidence. It must be conceded that there is much force in this contention inasmuch as the constitutional authority vested in us to determine issues of fact unquestionably charges us with the obligation of reaching a conclusion of fact on our own account. But, in our appraisal of the evidence, we are not required to resolve the issue without giving due consideration to the findings of fact by the court below. On the contrary, the jurisprudence is firmly established that the findings of the trial judge on questions of fact is entitled to great weight, particularly where the evidence is conflicting, as he sees the witnesses and hears them testify and, in most instances, is in a far better position than we are to judge the credibility to be given to their statements. Consequently, the appellate courts will not reverse his ruling unless it is found to be manifestly erroneous. This is the thought which we intended to convey when we made the statement, in our original opinion, that we were unable to reach an independent conclusion on the facts and that, if we did not have the benefit of the finding of the district judge, we would encounter difficulty in rendering a decree.
Counsel for Marcomb readily concede the soundness of the rule of manifest error, above discussed, but they say that it cannot be applied in the instant case for the reason that the only testimony submitted to show fault on Marcomb's part is the statement of the cabdriver who did not appear before the district judge as his testimony was taken by deposition. However, this contention overlooks the fact that Marcomb appeared in the district court and gave evidence by which he sought to exonerate himself from fault. Therefore, the judge had the opportunity of observing his demeanor on the stand and of judging his credibility. And, if it appeared to the judge either that Marcomb's statement was not wholly credible or that it revealed negligence on his part, he was justified in determining that plaintiff and the co-defendant cab company had established his liability by a preponderance of evidence.
Another statement contained in the original opinion, to which counsel for Marcomb take exception, is our observation to the effect that intersectional accidents do not occur if both drivers of the colliding vehicles exercise ordinary care and prudence. This remark, while patently correct, is meaningless and without pertinence when applied to the facts of this case — for, as counsel contend, the accident may well have happened as the result of the sole fault of the cabdriver and Marcomb may not have been guilty of any fault whatsoever. What we intended to say is what is ordinarily true of most intersectional collisions — that is, that, if either driver had exercised the care and caution of a reasonably prudent man, the accident would not have occurred.
Passing on to a reconsideration of the question of the liability of the defendants, we find that the facts of the case have been fairly stated in our original opinion. See17 So.2d 835. However, in view of the additional arguments which have been made by counsel for the respective defendants on this rehearing, it is necessary and appropriate to restate the undisputed facts before we undertake a discussion of the conflicting testimony which was submitted in the court below.
The accident occurred at about 9:00 A.M. on a clear day, November 20, 1939, at the intersection of Poydras and Dryades *Page 379 
streets in the city of New Orleans. Poydras Street is a wide, paved thoroughfare with a double driveway which is separated by a narrow neutral ground, 15 feet in width. Each of the driveways is about 46 feet wide; the lower one accommodating traffic travelling from the Mississippi river towards Lake Pontchartrain and the upper one being used by traffic proceeding in the opposite direction. Dryades Street, which crosses Poydras Street at right angles, is a one-way paved street running from the downtown section of New Orleans towards the upper section and is used by traffic proceeding in the direction of uptown only. At the intersection of the two streets are electric traffic semaphore lights by which progress over the intersection is controlled. When the lights are green facing Dryades Street, traffic on that thoroughfare is permitted to proceed. However, when the light is green facing Dryades Street and red facing Poydras Street, traffic situated in the lower driveway of Poydras Street, in the lane adjacent to the neutral ground, is permitted to turn left into the intersection and proceed either up Dryades Street or around into the upper roadway of Poydras Street.
Just prior to the accident, a taxicab owned by Toye Bros. Yellow Cab Co., and driven by its employee, one Rodelliat, in which the plaintiff, Mrs. Perret, was a passenger, had been proceeding up Dryades Street towards Poydras Street. As it arrived at or near the lower property line of Poydras Street, the traffic semaphore turned green and the cabdriver proceeded into the intersection and over the lower roadway of the street. However, just as the cab reached the neutral ground of the crossing, its left front fender came in contact with the right front fender of the automobile of Marcomb, which had come into the intersection from the lower roadway of Poydras Street and was engaged in making a "U" turn over the neutral ground portion thereof. Inasmuch as traffic travelling on the lower roadway of Poydras Street in the lane adjacent to the neutral ground is permitted to turn left on a red light, the Marcomb car was afforded the right, under the city ordinance, to make the left turn. Likewise, the taxicab had the privilege of negotiating the crossing as it was travelling on a green light. It therefore follows that, since both vehicles were accorded the privilege of proceeding under the traffic ordinance, the questions of fact to be determined in the case are whether the accident was caused by the fault of the cabdriver or Marcomb or whether both drivers were guilty of negligence which had causal connection with the collision.
[2] Counsel for Marcomb direct our attention to the rules of evidence concerning the burden of proof which pertains to this case. They maintain, and correctly so, that the plaintiff had the burden of proving by a preponderance of evidence that Marcomb was guilty of fault which had causal connection with the accident as his duty to plaintiff was only that he should exercise ordinary care in driving his car so as not to cause injury to her. On the other hand, the burden of proof as between the taxicab company and plaintiff was upon the former, as it had contracted to deliver plaintiff to her destination and, in executing this mission, it was chargeable with the highest degree of care to see that its obligation was fulfilled. Hence, in order to exonerate itself from liability, the cab company was charged with the burden of showing that its driver was free from negligence and, while it was not ordinarily required to prove the cause of the mishap, it is obvious, in this case, that the burden rested upon it to do so since it charges in its answer that the accident resulted exclusively from the fault of Marcomb. Hence, insofar as Marcomb is concerned, the duty rested upon plaintiff and the taxicab company (since it claims that the accident is solely due to his fault) to prove by a preponderance of evidence that he, at least, was guilty of some dereliction which directly contributed to plaintiff's injuries.
The specific allegations of negligence made against Marcomb which are contained in plaintiff's petition and in the cab company's answer are the usual charges made in cases of this kind, i.e., excessive speed, failure to exercise a proper lookout and failure to have his car under control. And the cab company further charges that Marcomb violated certain provisions of the traffic ordinance by entering the intersection from Poydras Street and making a left hand turn on a red light. However, these last contentions are without merit as we find that the traffic ordinance permitted Marcomb to proceed. The controlling section of the ordinance is Section 3, paragraph (a) of Article III which declares that, at certain intersections, traffic intending to turn left shall be permitted to proceed *Page 380 
on a red signal provided such permission is stated by means of a special sign displayed at that point.
There were only two eye witnesses to the collision, viz., the cabdriver, whose evidence was taken by deposition, and Marcomb. The testimony of the plaintiff is valueless on the issue of liability as she stated that she did not see the Marcomb car prior to the collision because she had her head down and was looking in her purse during the time the taxicab was negotiating the crossing. And, while it is shown that she gave a written statement to the cab company which is directly in conflict with her sworn evidence, that statement, as heretofore pointed out in our original opinion, cannot be used as evidence against Marcomb.
The testimony of the cabdriver and Marcomb, concerning their own movements and the actions of each other prior to the collision, is highly conflicting, as is commonly the case in matters of this nature. The cabdriver states that, when he approached the lowerside roadway of Poydras Street, he slowed down, as the traffic signal was red, and that there were other automobiles ahead of him on Dryades Street waiting for the change of the light to green; that, as he slowed down and changed his gear, the traffic signal turned to green; that he thereupon proceeded over the lower roadway of the crossing at a speed of 15 miles per hour following about 40 feet to the rear of another car which was in front of the cab; that, when the cab had arrived at a point approximately in the middle of the lower roadway, he noticed Marcomb's car coming into the intersection from his left on Poydras Street; that he judged the Marcomb car to be travelling at a speed of 30 miles per hour; that the car came into the intersection at such speed and attempted to execute a wide left-hand turn and that, as Marcomb executed this maneuver, the right front fender of his car struck the left front fender of the taxicab a glancing blow. The cab driver further says that the reason why he did not observe the Marcomb car, prior to the time the cab had reached a point half-way over the lower roadway of Poydras Street, was because the automobile was screened from his view by the presence of two other automobiles, which had stopped on Poydras Street at the intersection in obedience to the red light facing them.
On the other hand, Marcomb's account of the accident pictures a vastly different situation. He says that, prior to the accident, he was coming out Poydras Street towards Lake Pontchartrain at a speed of 20 to 25 miles per hour; that he had crossed Baronne Street on a green light and that, as he did so, he remembered that he had left a piece of equipment at a business supply house from whence he, had come; that it was necessary for him to have this equipment and so he decided to make a "U" turn at Dryades Street to go back to the business house and retrieve the forgotten article; that he was proceeding in the traffic lane on Poydras Street nearest the neutral ground; that, as he approached Dryades Street, he observed that the traffic signal was red, or favorable for a "U" turn; that, as he reached a point 15 feet from the entrance, of the intersection, he looked to his right and saw the taxicab which was then on Dryades Street at a point about 10 feet from the intersection of the lower roadway of Poydras Street; that he put out his left hand as a signal for the left turn which he was about to make and proceeded to execute this maneuver without again looking at the taxicab; that he made a tight or short turn which did not extend the front of his car into the intersection more than 7 feet from the neutral ground curbing and that, just as he had executed about one-quarter of the turn, the taxicab came over the crossing too close to his car and collided with his right front fender. Marcomb, further states that he did not see any other vehicles on Dryades Street at the intersection which preceded the taxicab over the crossing; that he estimates the speed of the laxicab to have been 30 miles per hour and that there were no other vehicles to his right on the lower roadway of Poydras Street which had stopped in obedience to the red light (although he admits that there was one Ford car to the right of him which he says was slightly to his rear on its journey to the intersection).
The testimony of Marcomb, as to the point where the collision occurred and as to how far his car had progressed into the intersection when it came in contact with the fender of the taxicab, is somewhat in conflict with the allegations contained in his answer, for there he averred "that he had long since turned left and was going south in the intersection when he was run into by the taxi cab." There appears to he a controversy between counsel for *Page 381 
Marcomb and counsel for the taxicab company as to what Marcomb meant by his allegation that he "was going south in the intersection" when he was run into by the cab. We are of the opinion that the statement is clear and that it was intended to convey the idea that Marcomb had fully executed the left-hand turn and was proceeding on his way at the time the cab came into the intersection and struck him.
Before we compare Marcomb's evidence with that of the cab driver, it may be well to observe that we now perceive that his statement might not have impressed the trial judge favorably and that the latter may have concluded that his testimony warranted a finding that be did not exercise the prudence required of a reasonably careful driver when confronted with the traffic conditions which Marcomb says were presented to him. For instance, Marcomb asserts that, when he was 15 feet from the intersection, he saw the cab coming into the lower roadway of Poydras Street; that it was then at a point 10 feet from the entrance of the roadway and that it was being operated at a speed of 30 miles per hour. Hence, by his own statement, he was apprised of the fact that the cab was on its way into the intersection at an excessive rate of speed at a time when he was approaching it, from a distance of 15 feet, at the slow speed of 10 miles per hour. Yet, he turned his eyes away from the oncoming cab and proceeded into the intersection without looking at it again. While it is true that Marcomb explains that, at the time he saw the cab, he did not know that it was travelling at such a fast rate of speed; that he assumed that its speed was normal and that he believed that he could easily execute the turn prior to the time it reached the neutral ground, we seriously doubt that be was entitled to continue forward without again glancing in the direction of the cab and without making certain that its presence in the roadway would not make his maneuver hazardous.
[3] Therefore, we find that the judge of the lower court had evidence before him, aside from the cabdriver's evidence, which warranted a resolution that Marcomb was guilty of at least concurring fault. But when we compare the cabdriver's testimony with the statement of Marcomb and consider their evidence in the light of the physical facts of the case, we come to the realization that the former's evidence gives a clearer and more accurate picture not only of the circumstances prevailing at the time of the occurrence but also that the accident could not have happened had Marcomb been exercising the ordinary care and prudence required of any operator of a vehicle in driving his car over the busy streets of a municipality. The cabdriver stated that there were two automobiles on the lower roadway of Poydras Street which had stopped at the intersection in obedience to the red traffic semaphore light facing them and that it was due to their presence that he did not see the Marcomb car until he had reached a point approximately in the middle of the lower roadway of the intersection. Marcomb, on the other hand, states that there was no traffic at all and that his vision of the taxicab was not in any manner obscured. If this be true, then it is highly unlikely that a collision would have occurred if either driver would have paid the slightest attention to the actions of the other. It seems more reasonable to conclude that the probabilities are that the cabdriver is correct when he says that there were two other vehicles stopped at the intersection and that the presence of those vehicles partially obscured his vision of Marcomb and the latter's vision of him.
Then again, Marcomb would have us believe that, although he had but, recently decided to make a "U" turn over the Dryades street intersection of the neutral ground roadway, he executed this turn in such a manner that his car extended only 7 feet into the 25 foot intersection. This statement, we find, is not wholly accurate for it must be borne in mind that the left wheels of Marcomb's car, at the time he attempted to execute the "U" turn, were (and were required to be) very close to the neutral ground curbing. It was therefore necessary for him to drive far enough into the intersection so that, in executing the turn, his left rear wheel would not make contact with the neutral ground curbing. It is difficult for us, without knowing the length of the Marcomb car, to ascertain exactly how far the vehicle would have been required to go into the intersection so that the "U" turn could be made without the left rear wheel striking the neutral ground curbing but we believe that it is reasonable to resolve that Marcomb is in error when he asserts that the turn was executed in a space of not more than 7 feet. The taxicab driver says that Marcomb made a wide left turn and we now think that his evidence on this point is probably correct. *Page 382 
[4, 5] Much is said by counsel for Marcomb, in brief and in oral argument, about the rights which were accorded to Marcomb when he undertook to execute the "U" turn at the intersection. It is stated by counsel that Marcomb was required to move on the red light. This is inaccurate; Marcomb was not required to move; he was granted permission to proceed and then only in the event that conditions at the intersection were such that it would be safe for him to do so. The right enjoyed by Marcomb to make a left turn at the intersection was correlative and reciprocal with the right granted to the taxicab to proceed over the crossing on a green light. Neither the cabdriver nor Marcomb were entitled to exercise their respective rights when to do so might be hazardous. In other words, Marcomb cannot be excused from blame if he went into the intersection at a time when the taxicab was entering it or at a time when he, by the use of his powers of observation, could and should have realized that a collision between his car and the taxicab was likely to occur. It must be borne in mind that the undisputed evidence in the case shows that the contact between the two vehicles was made at a time when both of them had just come into the intersection. Neither one nor the other had preempted the crossing nor was either car being operated, in our opinion, at an excessive rate of speed. And this, despite Marcomb's estimate that the cab was going 30 miles per hour and the cabdriver's declaration that Marcomb was travelling at a like speed. The truth is, we think, that the drivers of both cars entered the intersection without realizing the presence of each other until the oncoming vehicles had reached a point where it was too late to avoid a collision. In such circumstances, it is proper to resolve that the accident is attributable to the concurring fault of both drivers — for, if either of them had been on the alert, they would have observed each other at a time when they could have easily foreseen that to proceed would be dangerous and could have, by the use of ordinary care, averted contact with each other.
In our original opinion, we refrained from deciding definitely whether the cabdriver or Marcomb or both were at fault as we pitched our affirmance of the judgment on the ground that the trial judge had determined the issue of negligence and that we were unable to detect manifest error in his holding. We now not only reiterate this view but also conclude, after a careful reconsideration of the case, that the judge's appreciation of the evidence is correct.
It therefore follows that our former opinion, as corrected and amplified by the views set forth herein, will be reinstated. We do not deem it necessary to again discuss the quantum of damages as there has been nothing said by any of the parties on this rehearing which convinces us that the damages awarded to plaintiff are either excessive or inadequate.
For the reasons assigned, our original opinion and decree herein are reinstated as the final judgment of this court.
Original decree reinstated.