ELLIS, Judge.
This suit is filed by a guest passenger for personal injuries and by her husband, who sued for reimbursement of medical expenses incurred by his wife, as a result of an intersectional collision which occurred in the City of New Iberia, Louisiana in daylight hours at approximately 4:30 p. m. on January 2, 1957 between an automobile being driven by Mrs. Fedora Maturin, a sister of her guest passenger plaintiff herein, Mrs. Zoe Rome Derouen and the car being driven by Mrs. Galdwin Derouen, no relation of the guest passenger. Mrs. Galdwin Derouen’s two small daughters, aged three and four, were in the car with her at the time of the collision. Plaintiff’s suit was filed against Mrs. Galdwin Derouen, her husband, and his insurer, and the insurer of the Maturin automobile in which Mrs. Zoe Rome Derouen was a guest passenger.
At the trial on the merits, the District Judge in his written reasons for judgment stated that as both drivers contended and testified that they went into the intersection with a favorable green light, that it was a self evident fact that one of the drivers was in error, and that he was unable for reasons given to decide which had the green light and that he could find no other evidence, direct or in the nature of a physical fact, to aid him in reaching a conclusion as to which driver had the green light. The *524 lower court then concluded that as the burden of proof was upon the plaintiffs that they had failed to prove the negligence charged by a preponderance of the evidence and he therefore rendered judgment in favor of the defendants and against the plaintiffs, dismissing the suits of the plaintiffs at their cost.
Motion for a new trial was filed in which the alleged errors of the lower court were set forth in order, numbering one to seven. The lower court with written reasons for its ruling on the application for a new trial or rehearing, denied the new trial, whereupon plaintiffs appealed to this court.
Counsel for plaintiffs in the main disagree with the legal conclusions which the district judge applied in arriving at his judgment. We find that the record fully substantiates the correctness of the facts as found by the District Judge, the correctness of the law which he applied to these facts and the conclusion which he reached. We therefore take the liberty of quoting the reasons for judgment of the Lower Court, the application for a rehearing and/or new trial and the reasons of the District Court for its ruling on the application for a new trial or rehearing, and adopt the reasons for the judgment and for the denial for a new trial or rehearing as our own. We quote:
“At about 4:00 P.M. on January 2, «1957 Mrs. Galdwin Derouen was driving her family car, a 1951 Plymouth automobile on Dale Street in the City of New Iberia. She was traveling north. She had with her her two small daughters, Debbie and Christine Derouen.
“At the same time Mrs. Whitney Ma-turin was driving her family car, a 1954 Ford automobile, on Walton Street. She was traveling west. She had with her as her guest, Mrs. Vernus Derouen.
“These two streets are paved and intersect at right angles. Traffic at their intersection is intended to be controlled by an ordinary green and red traffic light which hangs over the center of the intersection.
“Both cars were being driven at about 25 miles per hour as they approached the intersection. Both of the lady drivers claim that the light was green as they approached it. Neither slowed down or took any other precaution against cross traffic. Consequently, they collided in the center of the intersection. The Ford, on Walton Street, struck the Plymouth, on Dale Street, in its center on its right side. The Ford struck with its front. The Plymouth was turned over and Mrs. Galdwin Derouen and one of her daughters were injured. The two ladies in the Ford were also injured. The cars were badly damaged.
“These actions flow as a result of this collision. Mr. and Mrs. Galdwin Derouen, on behalf of themselves and their children, are suing Mr. and Mrs. Whitney Maturin and the public liability insurance carrier on the Maturin car, the Firemen’s Insurance Company of Neward, New Jersey.
“In the other action, the passenger, Mrs. Vernus Derouen is suing Mr. and Mrs. Galdwin Derouen, and the public liability insurance carrier on the Plymouth, the American Employers Insurance Company and also the Firemen’s Insurance Company who had the liability policy on the Ford in which she was riding.
“The principal witnesses at the trial were the three ladies.
“Mrs. Galdwin Derouen testified that she had a green light at the intersection. Mrs. Maturin testified that she had the green light. She is corroborated by her guest, Mrs. Vernus Derouen. At least Mrs. Derouen said the light was green as they approached it. She did not look at it constantly until they entered the intersection.
“There is no other testimony on the point except that of the policeman who was called at the scene. He said that the light was working properly while he was there. There is no evidence, or contention, that it was not working properly.
*525 “It is evident that one of the drivers is in error. The light could not have been green on the two streets at the same time.
“No citation of authority is necessary to show that the lady having the green light was entitled to proceed, and not the other. The one having the red light was under a legal obligation to stop. When she failed to stop she became guilty of negligence, which obviously was the direct cause of the collision. This rendered her, her husband and their insurer liable for the injuries and damages thereby caused.
“However, it is not possible from the evidence to determine which lady entered the intersection on a red light. It is therefore not possible to fix the responsibility for the collision. Unlike most collisions, there are no physical facts, or other mute evidence, to aid us in reaching a conclusion. A finding on that point can be based only on speculation.
“The testimony of each driver is entitled to equal credibility because there is nothing in their testimony to which we can resort to give more weight to the testimony of one than to the other, or to discredit one and not the other. It is true that Mrs. Maturin is corroborated to an extent by her guest passenger, Mrs. Vernus Derouen. But Mrs. Derouen was not driving, so she had less interest than the other ladies in making a mental note of the light. Then again, she says that she did not observe the light continuously until they reached the intersection. It could have turned red without her noticing it.
“The addition of Mrs. Derouen’s testimony to that of Mrs. Maturin does not unbalance the scale to the extent that it can be-held to have established, by a preponderance of the evidence, that it was Mrs. Galdwin Derouen who had the red light, because the weight to be given evidence does not necessarily depend upon the number of witnesses who give it. In other words, two witnesses are not necessarily better than one.
“As these two actions are brought under our general tort law, Articles 2315 and 2316 of our [LSA-]Revised Civil Code, in order to succeed the plaintiffs must prove the defendants to have been negligent. Negligence is the basis of the actions. Unless the plaintiffs establish it by a preponderance of the evidence against the defendants, or the insureds, no recovery can be had. This is the case here. The evidence shows that at least one of the drivers was probably negligent, but it fails to show which one. Under these conditions, we cannot render judgment against either.
“Counsel for the guest passenger, Mrs. Vernus Derouen, argue that she could not possibly have been negligent because she was not driving, and to bar her from recovery is to do her an injustice. They point out that the two drivers could have seen each other approach the intersection, and to have proceeded when it became apparent that the other was not stopping, constituted negligence regardless of the traffic light. They were therefore both negligent and the passenger should recover from both of them, or their insurers.
“But it is not an accepted fact that the two drivers could see each other in time to stop. There is a solid board fence and a residence on the corner that was between them. At the distances from the intersection that place the house between the drivers, it was, of course, not possible for the drivers to see each other. When they reached closer to the intersection, the fence was between them. Only the very tip of the top of an automobile is visible over the fence. The photographs show that. But by the time the drivers reached this point, it would probably have been impossible to stop. Under these circumstances we cannot hold both drivers negligent.
“But aside from that, one approaching an intersection on a green light has *526 the right to assume that all cars approaching it on a red light will stop. More than likely when it becomes apparent that the car that is supposed to stop will fail to do so, it is too late for the car on the green light to stop in time to prevent a collision. This is particularly true at a blind intersection as is the one involved here.
“According to the table in the 14 Tulane Law Review at page 503, the stopping distance for a car traveling 25 miles per hour is approximately 53 feet. It was therefore incumbent on the drivers, or either of them, to have applied the brakes 53 feet from the intersection if a collision was to be avoided. At that distance, it could hardly have been foreseen by either driver that a collision was imminent.
“The purpose of traffic lights is to expedite the flow of traffic and to lessen the risk of collisions at intersections by alternately shifting the right of way. Their purpose is frustrated if motorists approaching them when they are green are required to slow down, or stop, to protect these approaching from' the sides, in the same manner they are required to do at intersections without lights, and without well established rights of way.
“With the volume of traffic we have on our streets today, a motorist employing these tactics would run the risk of being run into from the rear, and, if all motorists did so, traffic would necessarily be slowed down. It was therefore not negligent for the lady who had the green light not to have stopped in time to avoid the collision.
“It is incumbent upon the passenger, Mrs. Vernus Derouen, like the other plaintiffs, to prove negligence on one of the drivers before she can recover. It is not sufficient that she show only her freedom from negligence. And, to hold negligent the lady approaching on the green light, under the circumstances, would be a miscarriage of justice.
“It must be realized' that this situation visits a hardw/hip on the innocent driver and upon Mrs. Derouen, the guest passenger. But at the same time it cannot serve as the basis for a decision in a tort action, where the only ground for the action is negligence. In the absence of proof of negligence, there cannot be recovery for a tort. This is the situation here.
“For these reasons, therefore, let there be judgments in favor of the defendants, and against the plaintiffs, dismissing the suits of the plaintiffs at their costs.”
Application for Rehearing and/or New Trial
“The joint petition of Vernus Derouen, husband of, and Zoe Rome, his wife, respectfully represents:
“ ‘That the judgment rendered in this cause on the 29th day of January, 1959, is erroneous and contrary to the law and evidence, and prejudicial to the interest of petitioners, and that a rehearing and/or new trial should be granted in this matter, for the following reasons, towit:
“ T. The Court is in error in dismissing and not considering the testimony of plaintiff, a guest passenger in the Maturin vehicle, whose testimony agreed with and completely corroborated that of Mrs. Whitney Maturin (the driver of the car in which plaintiff was riding) in the respect that the Maturin car crossed the intersection of Dale and Walton Streets on a green light, such testimony causing the scales, indicating the preponderance of the evidence, to be tipped in plaintiff’s favor by reason of there being two witnesses so testifying favorably on the question of the color of the light (green), to one witness for the defendant (Mrs. Galdwin Derouen), and the testimony of plaintiff being completely uncontradicted and not discredited at trial.
“ ‘2. That on November 17, 1958 the case of the Insurance Company of North America v. Gore, et al, 106 So.2d 471, et seq., Orleans Court of Appeals, was decided, such opinion published in the Advance Sheets of the Southern Reporter, *527 and made available to the Court and to counsel for plaintiff after the Court had handed down its written reasons for judgment, which were adverse to the plaintiffs, which case, it is submitted, should be considered by the Court in a rehearing of this matter, said case being directly contrary on the identical point involved herein as to the law from the decision rendered by this court.
“ ‘3. The Court erred in not applying the law and the principles of law as set forth in the case of Perret v. Toye Brothers [La.App.], 17 So.2d 835, affirmed [La.App.] 20 So.2d 377, and in [Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1] 5 A.L.R.2d 96, et seq., and the principles of law governing evidence as enunciated by Wigmore on Evidence, Volume 9-, Section 2487, pages 278, et seq., and more particularly beginning at the bottom of page 281, and continuing on to pages 282, 283 and 284, and also in the Advance Sheets of said Volume on said Section.
“ ‘4. The court erred in finding that the two drivers were entitled to equal credibility, and then in failing to give even the slightest weight to the testimony of the plaintiff, a guest passenger, when it was shown that she was an absolutely impartial witness, and had no interest or motive in favoring one defendant over the other.
“ ‘5. The Court erred in discrediting the plaintiffs testimony because “ * * * she did not observe the light continuously until they reached the intersection * * *” when plaintiff’s testimony was that the light was green facing the car in which she was riding when she was some fifteen or sixteen feet from the intersection, when it is a matter of common knowledge, and the Court should take judicial notice of the fact that a car driven at fifteen, twenty or twenty-five miles per hour will pass a light that is green before the amber light goes on and the light changes to red.
“ ‘6. It was error for the Court to discredit the plaintiff’s testimony because she did not watch the light continuously (she having seen it as green from fifteen to sixteen feet from the intersection) when the Court itself found that either driver would have to apply brakes, and I quote: “ * * * It was therefore incumbent on the drivers or either of them to have applied the brakes 53 feet from the intersection if a collision was to be avoided ‡ * íjs ÍJ
“ ‘7. It was error for the Court to find that drivers can rely entirely on a green light at a “blind” intersection, negligently and blindly driving into an intersection without any observation or any precautions whatsoever for their own safety other than a heedless and reckless reliance entirely upon the fact that the light was green.’
“Wherefore, the premises considered, petitioners pray that, after due consideration, a rehearing and/or a new trial be granted in this case and that finally the judgment of the District Court be avoided and reversed and that judgment be ultimately rendered herein by this Court in favor of the petitioners herein as originally prayed for, and for all general and equitable relief.”
Written Reasons of Lower Court in Denying Motion for Rehearing and/or New Trial
“Mr. and Mrs. Vernus Derouen complain of the judgment rendered herein denying them recovery because they failed to prove the negligence, by a preponderance of the evidence, of the drivers of the cars involved in the collision that was the subject of their suit.
“They claim that the ordinary rules of evidence do not apply because Mrs. Der-ouen was a guest passenger in one of the cars. In such cases they contend that the defendants have to prove their freedom from fault, instead of the plaintiffs having to prove the negligence of the defendants.
“Their contention is principally based upon a recent decision of the Court of Appeal of Orleans Parish, entitled Insurance Company of North American et al vs. Wil *528 liam C. Gore et al, 106 So.2d 471, in which the Court said:
“ ‘We are dealing with a case where the property of an innocent party is damaged as a result of an accident between two automobiles, the owners and operators of which are made solidary defendants. Under such circumstances the burden of proof is upon each defendant to exculpate himself from negligence, and each must be deemed guilty of negligence per se in the absence of any showing' to the contrary. Marquez v. Miller, La.App., 64 So.2d 526; Bonner v. Boudreaux, La.App., 8 So.2d 309; Armstrong v. New Orleans Public Service, Inc., La.App., 188 So. 189; Weddle v. Phelan, La.App., 177 So. 407.’
“That statement seems to be a mis-statement of the doctrine of res ipsa loquitur. As we shall see later, more is required of a plaintiff than being an innocent party to invoke the doctrine. After all, every plaintiff must be an ‘Innocent party’ before he can recover for a tort, otherwise he is guilty of contributory negligence. The term simply means ‘freedom from negligence’. That alone never has been held sufficient for recovery. It is the ‘fault’ of the defendant that constitutes the tort, as is provided for in Article 2315 of our [LSA-] Revised Civil Code.
“But however this may be, the plaintiffs did not plead, nor did they establish by the evidence, a condition that warrants the application of any rule other than the general rule that requires a plaintiff to prove his case by the preponderance of the evidence.
“Mr. and Mrs. Derouen allege seven specific and identical acts of negligence against each driver. They do not allege, nor can we glean from the petition, that these are facts that they are not in a position to know, but that the defendants alone should know, because of any special, or peculiar, circumstances. They do not allege that the situation surrounding the collision was such that it would not have occurred, but for the concurring negligence of both drivers.
“Not only are these allegations sacramental to invoke the doctrine of res ipsa loquitur, but they must be substantiated by the facts.
“The facts here show that the collision was caused by one of the drivers running a red light. From the evidence we cannot determine which driver did so.
“But the fact remains that the other driver had a green light. As to that driver no doctrine can be invoked to create a presumption of negligence. So, if we attempt to invoke the doctrine, it is obvious we cannot invoke it against both drivers. We know that at least one of them was not negligent. And, to invoke it against the driver that ran the red light, we must first find out who she is. That is the question we set out to answer in the first place.
“Not only that, but Mrs. Vernus De-rouen, being a guest passenger in one of the cars, was present and observing the occurrences that preceded the accident equally with both drivers. She testified as to what she saw and did. She claims that the lady with whom" she was riding, Mrs'. Whitney Maturin, had the green light as thej'- approached the intersection. As a witness, therefore, she attempted to absolve-one of the drivers of blame. Her contention here that that driver should be presumed guilty of negligence contradicts her testimony, and her testimony contradicts, the allegations of her petition regarding the negligence of that driver.
“That leaves only the other driver, Mrs. Galdwin Derouen, against whom the plaintiffs could possibly seek to invoke the (doctrine they espouse. And, there is no more reason to invoke it against her than there is to invoke it against Mrs. Maturin. After all, Mrs. Galdwin Derouen may-have been the driver that had the green light.
*529 “Obviously, it is not possible to employe the doctrine here. The following observations may not be necessary to support the decision herein, but they are germane to the issue.
“It is recognized that the doctrine of res ipsa loquitur as it exists in this state is correctly set forth in the case of Lykiardopoulo vs New Orleans & C. R. Light & Power Co., et al, 127 La. 309, 53 So. 575.
“The doctrine is:
“ 'In cases where the plaintiff cannot be expected to have any information as to the causes of the accident, whereas the defendant on the contrary, must be assumed to be fully informed on the subject, and where the accident is of the kind which ordinarily do not occur when due care has been exercised, the rule of evidence is that the accident speaks for itself— res ipsa loquitur — that is to say that a presumption of negligence arises from the fact itself of the accident. In such cases, the plaintiff not only need not allege the particular acts of omission or commission from which the accident has resulted, but need not even prove them. The accident itself makes out a prima facie case, and the burden is on defendant to show absence of negligence. Res ipsa loquitur. That rule is of peculiar applicability in cases of boiler explosions. Thus, negligence may be inferred from the fact of the explosion of the boiler of the vessel, although the defendant is under no contract obligation to protect the plaintiff.’
“Our courts have extended the doctrine to automobile collision cases, particularly when a guest passenger is the plaintiff. The application has by no means been uniform. The extremes could well be said to be the case that the plaintiffs cite and from which we quoted above, and the case of Guiteau vs. Southern Parking Co., Inc., et al., 49 So.2d 880, decided by the same Court. In the last case the Court said that the doctrine is applicable to automobile accident cases but rarely.
“It said:
“ ‘Only rarely is the rule applicable in an automobile accident case, even where only one vehicle is involved. We discussed this particular question in Hebert v. General Accident Fire & Life Assur. Corp., La.App., 48 So.2d 107, and in this case the Supreme Court refused a writ of certiorari on December 11, 1950.
“ ‘But we did say in that case, and we repeat, that there may be situations in which the doctrine may be applied where an automobile accident is involved. However, even though it be true that there may be cases in which the doctrine is applicable where one automobile is involved, very seldom indeed may it be applied where two cars participate and where the driver of either or both may have been at fault. The reason for the scarcity of such two-vehicle cases seems to be that the rule ordinarily should be invoked only where all of the agencies which may have been involved were under the control of one defendant. In such cases it is proper to call upon that defendant to explain the occurrence in such a way as will absolve him. It is, therefore, doubtful if the rule should be applied where there are two or more defendants, either or both of whom may have been at fault. It must be conceded, however, that there are cases — some in Louisiana — in which the doctrine has been applied against two defendants.’
“Whatever may be said of the decisions of the Courts, it should be observed that laxity in the employment of the doctrine to facilitate one litigant is done at the expense of another litigant. In some cases the situation does not seem to justify it.
*530 “Actually, our codal provision, which is a legislative act, creates liability for torts only upon those who commit them through their fault. Under our rules of evidence one cannot be cast for a tort unless his liability is established by a preponderance of the evidence. In other words, he must be proved to have been negligent by a preponderance of the evidence.
“Any doctrine that does not require that a defendant be found negligent, by a preponderance of the evidence, before he can be held liable for an act, contravenes the positive provisions of our law. It may amount to the taking of his property without due process of law. Undoubtedly, some circumstances may justify such a doctrine. Those set forth in the Lykiardo-poulo case seem to do so.
“This is so because the situation alleged shows that the accident would not have happened but for the negligence of the defendants. Proof of the accident and the circumstances is tantamount to proving negligence. The plaintiff need do no more because he can do no more. The particular facts are not within his knowledge. We permit him to recover under this proof, unless the defendant can show his freedom from negligence.
“But these circumstances do not necessarily exist in all tort actions by guest passengers, or innocent persons. Their only attribute is that they are probably not guilty of contributory negligence. That does not necessarily impute negligence to whatever defendants they may choose to sue. And, when we permit them to invoke the doctrine under consideration, without any general showing of negligence on all of the defendants, we are denying the legal rights of those defendants against whom no showing of negligence has been made. We presume them to be guilty of negligence for no reason, and we force them to prove their freedom from fault, all contrary to the positive provisions of our law.
“That is the situation in an action by a guest passenger against the operator of the automobile in which he is a guest, and the operator of another automobile with which he may have collided, when the quoted doctrine is made available to him.
“Obviously, the Gore, case does not state the doctrine correctly.
“For these reasons, therefore, the application for a new trial or rehearing is denied.”
Counsel for the plaintiffs in his argument, which followed the contents of his brief has set forth an assignment of error as to the law and the facts committed by the District Court, which must be considered and answered by this court. We quote counsel’s assignments of error from his brief, as follows:
“The plaintiffs respectfully submit that serious and grevious error as to the law and as to the facts has been committed, resulting in a gross miscarriage of justice, and a denial to these plaintiffs of their rights under our law. The errors committed by the District Court, of which Plaintiff complains- are:
“1. In finding that a guest passenger (Zoe Rome, wife of Vernus Derouen), who, though in no way causing or contributing to the occurrence of an intersec-tional collision between two vehicles, was under a strict legal duty of pin pointing with absolute certainty the driver (either one or more) legally responsible for the collision, and for her damages and injuries.
“The same problem existed in the case of Insurance Company of North America Companies versus Gore, 106 So.2d 471, a recent Orleans Parish Court of Appeal case, where the Court held in effect that since the property of an innocent third person had been damaged by one of the several automobiles involved in an intersec-tional collision, that the burden of proof was upon each of the defendants sued in solido by the plaintiff to exculpate himself from negligence. The Court went on *531 to say that in the absence of any showing to the contrary, each defendant must he deemed negligent per se. This case was cited to the District Judge, but he wrote that he disagreed with it. See also Marquez vs. Miller, 64 So.2d 256; Bonner vs. Boudreaux, 8 So.2d 309; Armstrong vs. New Orleans Public Service Corporation, 188 So.2d 189; Wendel [Weddle] vs. Phelen, 177 So. 407; all cited in the Gore case. See also Perret vs. Toye Brothers Yellow Cab Company, 17 So.2d 835, where the Court found itself unable to reach a definite conclusion concerning which of the defendant was at fault, and cast both defendants in judgment. See also Sumers [Summers] vs. Tice, 33 Cal.2d 80, 139 [199] P.2d 1, and likewise Ybarra vs. Spangard, 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258], and likewise, 5 A.L.R.2d at page 91 et seq., where the proposition of the inconclusiveness of the evidence is thoroughly discussed, and where under such circumstances the Courts placed the burden of proof on the defendants to exculpate themselves.
“2. Where the District Judge, as he found, was unable to determine who ran through the red light, and who likewise found that he should equally believe the three adult witnesses involved in this collision failed to correctly apply the rule of the preponderance of evidence which exists in civil cases, where on one side two unimpeached witnesses testified and agreed on the vital issue of who had the green light, and only one testified for the defendant on the issue. See Thermo Electric Co. vs. Dauterive, 8 La.App. 526; Peristeras [Peresteras] vs. Lombardo, 3 La.App. 324, and Thomas [Thoman] vs. Deliberto [17 La.App. 574], 136 So. 904 (Syll. #4.)
“3. In finding that two drivers of two vehicles are under no legal duty whatsoever upon approaching a dangerous intersection familiar to both of them, other than to observe and follow the green, amber and red city traffic light. See Fletcher vs. Allstate Insurance Company [La.App.], 88 So.2d 445, and Hickerson vs. Southern Farm Bureau Casualty Insurance Co., a First Circuit Court of Appeal case decided December 5, 1954 (rehearing denied January 29, 1955) 77 So.2d 124, and Martin vs. Adams [La.App.], 88 So.2d 476, and Currie vs. Government Employees Insurance Co. [La.App.], 90 So.2d 482, and Commercial Credit Corporation vs. Morriss [Morris La.App.], 107 So.2d 563, decided November 25, 1958. These cases set forth in essence the duties of a driver driving into and through an intersection, and likewise indicate, beyond doubt, that a driver has the duty to look, to observe, and to exercise caution even when travelling on a favored light into an intersection.
“4. In finding that he was unable to determine from the evidence which of the two drivers was negligent in the intersec-tional collision, and in completely disregarding the copious and abundant evidence contained in the record showing numerous acts of gross negligence on the part of both the drivers. See the transcript of the record, pages 52 through 57. See also the photographs filed in the record.
“5. In finding as a fact that this was an absolutely blind intersection to the drivers involved, when the photographs in evidence show clearly that the merest glance through or over the picket fence would have shown from a considerable distance on both Walton and West Dale streets the presence and approach of other vehicles to both drivers. (See photographs in evidence.)”
As to assignment of error Number 1, we agree thoroughly with the conclusion reached by the trial court as to the case of Insurance Company of North America v. Gore, supra, and we have considered the Louisiana cases cited and do not find them controlling because of factual distinction. As a matter of fact, the statement of the court relied upon in the Gore case was obiter dictum for the Court fixed full responsibility from the direct testimony in evidence on one of the defendants therein. In addition to the cases relied upon by the District Judge for holding that res ipsa lo- *532 quitur does not apply under the facts in this case, we have a recent case decided by the Supreme Court, which gives a'thorough discussion of the doctrine of res ipsa lo-quitur which is the case of Larkin v. State Farm Mutual Automobile Insurance Co., 233 La. 54 [544], 97 So.2d 389, 391, and we quote:
“A determination of a proper instance for application of the principle of res ipsa loquitur has been the subject of volumes of discussion by learned jurists and legal scholars, who have been at pains to point out that the maxim means only that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that the rule rests for its justification upon the common experience that accidents from such causes do not commonly occur in the absence of negligence; and that it is the lack of direct evidence indicating negligence on the part of the defendant as the responsible human cause of a particular accident which actually furnishes the occasion, and necessity for invoking the rule in its strict and distinctive sense. It is generally conceded that res ipsa loquitur in no way modifies the rule that negligence will not be presumed. The application of the rule does not, therefore, dispense with the necessity that the plaintiff prove negligence, but is simply a step in the process of such proof, permitting the plaintiff, in a proper case, to place in the scales, along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence, thereby obtaining an advantage and placing on the defendant the burden of going forward with proof to offset that advantage. When all the evidence is in, the question is still whether the preponderance is with the plaintiff. All that is meant by res ipsa loquitur is ‘that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the -subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, 'unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant’s duty.
“Many instances are noted where the doctrine, though invoked, has no application; e. g., it is obvious that when there is, in addition to evidence disclosing the physical cause of the accident, either direct or circumstantial evidence which conclusively repels any inference of negligence that might otherwise arise, the plaintiff is deprived of any practical advantage from the rule. Nor is a resort to res ipsa loquitur warranted in cases where the existence of negligence is an immaterial issue, such as cases dealing with food and drink for human consumption, since the manufacturer insured his product to be free from taint or injurious substances; or where the opposing parties or their witnesses are present and direct testimony as to the cause of the accident is available and an accident due to a collision between two private vehicles is not, in the absence of further proof, a proper occasion for application of the rule, since it is improper to assume that one driver, rather than the other, was negligent, or to ignore the fact that the collision might have been caused by factors outside the control of either. It necessarily follows that the maxim is not appropriate where, from the nature of the facts, it is reasonable to assume that the actions of the defendant may have been caused *533 by the negligence of another. In the case of Morales v. Employers’ Liability Assur. Corp., 202 La. 755, 12 So.2d 804, this Court aptly stated: ‘It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked.’ 202 La. at page 769, 12 So.2d at page 808.”
In the present case the opposing parties and their witnesses were present and direct testimony as to the cause of the accident was available and also this accident was due to a collision between two private vehicles, which “in absence of further proof” is not “a proper occasion for application of the rule, since it is improper to assume that one driver, rather than the other, was negligent, * * *” nor can it be said that the circumstances in the case at bar leave no room for a different presumption than the inference allowed by the rule of res ipsa loquitur which constitutes such proof. In the present case it is clear that one of the two drivers had a green light and the other one had a red light. It cannot be inferred that one with the green light was negligent. In order to reach a just conclusion or judgment the plaintiff must furnish proof to a legal certainty, that is, sufficient upon which an award or judgment could be based against that person, as to which driver proceeded into the intersection on a red light.
As to error Number Two we believe that the District Judge answered this contention clearly and fully in his written reasons for judgment when he said: “The addition of Mrs. Derouen’s testimony to that of Mrs. Maturin does not unbalance the scale to the extent that it can be held as established, by preponderance of the evidence, that it was Mrs. Galdwin Derouen who had the red light, because the weight to be given evidence does not necessarily depend upon the number of witnesses who give it. In other words, two witnesses are not necessarily better than one.”
Furthermore, the record shows that all three of the ladies (guest-passenger-plaintiff, defendant and driver of the guest passenger automobile) are plaintiffs in three separate suits and, also, the guest passenger-plaintiff is the sister of the driver of the car in which she was riding, and this driver is also a plaintiff in one of the suits not made part hereof but all resulting from this intersectional collision. There is grave doubt thrown upon the version of the accident given by the plaintiff and her sister, Mrs. Fedora Maturin to the effect that they looked up at the light when they were 12 to 16 feet from the intersection and it was green. Neither saw the defendant’s automobile until practically the moment of impact and yet, under the facts, when their car was 12 to 16 feet from the intersection and they testified they looked up at the light, the defendant’s automobile was already in the intersection, and if they looked forward and up as testified, it is difficult to understand why they did not see the defendant’s automobile at that time.
Counsel cites in support of this assignment of error. Thermo Electric Co. v. Dauterive, 8 La.App. 526. The case is not apposite because the Court of Appeal clearly found that according to probabilities, and the fact that an enginéer, whose former occupation was that of a chemist in an op-perating sugar factory, entirely operated by electricity, fortified the defendant’s testimony. In other words, they found additional testimony which they believed sufficient for the rendition of judgment in favor of the defendants. Neither the District Judge, nor do we, consider that the guest passenger’s testimony is sufficient for a finding that Mrs. Derouen went in the intersection on a red light.
*534 Counsel also cites Peresteras v. Lombardo, 3 La.App. 324. This case is not apposite in view of the fact that it was based upon the testimony of three witnesses, whom the lower court and the appellate court believed as opposed to the testimony of one witness, which the trial judge and appellate court did not consider as sufficient to destroy the evidence of the three.
Counsel also cites Thoman v. Deliberto, 136 So. 904, in which four witnesses testified for the defendant and one testified for the plaintiff. The trial judge believed the testimony of defendant’s witnesses and the appellate court was unable to find any facts or circumstances in the case, any evidence on which to base a reversal. The pertinent portion of the opinion reads as follows :
“Here we have only one witness testifying he entered the crossing first. On this fact, the pivotal issue, four for defendant testify he had entered first. True, the absolute test of the probative value of testimony does not depend on the number of witnesses, a fact, however, which is entitled to some consideration in the determination of a case. Although we recognize that such is not an absolute test, where, as in this case, there are no facts or circumstances destroying the value of the testimony of such witnesses, and the lower court has given credence thereto, the appellate court, which does not know the witnesses and is deprived of the advantage of seeing and hearing them testify, will not interfere in the exercise of its appellate jurisdiction with the finding below and indulge in the reversal of a judgment grounded on a question of fact, which is the case here.”
The third error, supra, which counsel for plaintiffs contends that the lower court made was in holding that the two drivers of two vehicles are under no legal duty whatsoever on approaching a dangerous intersection familiar to both of them, other than to observe and follow the green, or amber and red city traffic lights. Counsel cites a number of cases all of which are in accord with the established jurisprudence as to the legal duty of drivers approaching an intersection, controlled by light and they all recognize that the least care is exacted where there are such lights but it does not relieve a motorist of general duty to operate his car with careful and prudent regard for the safety of others. Where the accident could have been prevented by the mere observation of traffic conditions, he who fails to look, cannot recover, though the other party was grossly at fault. However, the district judge took this all into consideration and held that facts did not show that the two drivers could see each other in time to stop, due to the board fence and the residence on the corner and the fact that only the “tip of the top of an automobile is visible over the fence”. The District Judge further stated that according to the table in 14 Tulane Law Review, the stopping distance of a car traveling 25 miles per hour is approximately 53 feet and it was therefore incumbent on the drivers, either of them, to have applied the brakes at that distance from the intersection if a collision was to be avoided. He was of the opinion that it could hardly have been foreseen by either driver at that distance that a collision was imminent. There is no manifest error in such a conclusion from the facts of this case. Also the defendant driver testified that she looked and if she looked as she came to the corner of the fence she could not see 53 feet back down the street. In order to find liability as to a motorist traveling into an intersection on a favorable or green light, under the doctrine of discovered peril or the last clear chance, the facts must show that had the motorist exercised ordinary care he or she should or could have discovered the peril in time to have avoided the collision. The facts do not prove that either motorist, if they were proceeding on a green light, could or should have seen the other motorist was going to violate his right of way when there was sufficient distance remaining so that the mo *535 torist proceeding on the green light could have prevented the collision. Before liability can be imposed upon any of the defendants in this case, it is imperative, and must first be decided, which of the defendant drivers proceeded into the intersection on a green light, and the District Judge, in a clear and concise written opinion, stated his reasons for being unable from the record to answer this question, and we do not find any manifest error in his inability to decide between the defendant drivers which was proceeding on the green light into the intersection.
As to error Number Five, which counsel states was committed by the District Judge in finding it a fact that this was an absolutely blind intersection to the drivers involved, we do not so interpret the decision of the District Judge. He stated that for all practical purposes it was practically a blind intersection but he said the tip top of a car could be seen over the top of the fence. Even if the drivers could have seen a considerable distance through the fence or over the fence, if the motorist approaching the intersection had a green light, he had a right to assume that the motorist approaching from the opposite direction in face of a red light would stop and the motorist was only charged with the duty of exercising ordinary care, which means that he would only be charged with seeing the approaching motorist at a time and distance, if the view was not obstructed, when he should have realized as an ordinary, normal and observant motorist would, that the approaching motorist on the red light was not going to honor his right of way or the green light. Under the facts in this case, at the point that either of the motorists, assuming that each had a green light in applying the rule of law, could or should have discovered the peril, there was neither time nor distance to avoid a collision.
We find no manifest error in the judgment of the lower court and it is hereby affirmed.